1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   MARIO ESTRADA,                          )    1:08-CV-00830 AWI JMD HC
                                            )
10            Petitioner,                   )    FINDINGS AND RECOMMENDATION
                                            )    REGARDING PETITION FOR WRIT OF
11      v.                                  )    HABEAS CORPUS
                                            )
12   JAMES HARTLEY,                         )
                                            )
13            Respondent.                   )
     _____)

14

15          Petitioner Mario Estrada ("Petitioner") is a State prisoner proceeding *pro se* with a petition

16   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

17                              **PROCEDURAL HISTORY**

18          Petitioner is currently in the custody of the California Department of Corrections and

19   Rehabilitation at Avenal State Prison.  (Pet. at 2).   Petitioner is serving a sentence of sixteen years to

20   life, pursuant to a conviction in 1992 of second degree murder with the use of a knife.  (Pet at 2;

21   Answer at 1)

22          Petitioner does not challenge his conviction in this action; instead, Petitioner challenges the

23   decision by the California Board of Parole Hearings (the "Board"), whom he appeared before in

24   August 2006 for a parole consideration hearing.  (Answer at 1).  The Board found Petitioner

25   unsuitable for parole.

26          Petitioner subsequently filed a petition for writ of habeas corpus with the California Superior

27   Court, the California Court of Appeal, and the California Supreme Court, challenging the Board's

28   denial of parole.  (*See* Answer Exs. 1, 3, 5).  The California Superior Court was the only State court

1  to issue a reasoned opinion.  (*See* Answer Ex. 2).  The California Court of Appeal and the Supreme

2  Court issued summary denials of Petitioner's request for relief.  (Answer Exs. 4, 6).

3        On February 6, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in

4  the Central District of California.  (Court Doc. 1).  The case was transferred to this Court on April

5  21, 2008.

6        On September 3, 2008, Respondent filed a response to the petition.  Respondent admits that

7  Petitioner has exhausted his state remedies and that the instant petition is timely.  (Answer at 2).

8        On October 27, 2008, Petitioner filed a reply to the Respondent's answer.

9  **FACTUAL BACKGROUND**

10        As the facts of the commitment offense are relevant to determining whether Petitioner is

11  suitable for parole, the Court recites the facts as stated in the record of the parole hearing.  *See* Cal.

12  Code Regs., tit. 15, § 2402(c)(1).  The Board first incorporated into the record a summary of the

13  offense, taken from the District Attorney's Office,[1] which stated that:

14            On or about April 13th, 1991, the defendant stabbed and killed Rene Ginajero.
On April 13th, 1991 at approximately 1:00 a.m., victim Rene Ginajero was drinking at

15  a local bar, Tony's Hof Brau, when the defendant approached the victim's table and
began exchanging words with the victim.  According to witnesses, the defendant was

16  holding a folding type buck knife in his hand with the blade open.  The defendant
asked the victim do you know what a Mongel is.  And the victim replied, "yes, a

17  biker."  The defendant then closed the knife.  A moment later he again asked the
victim is a mon–what a Mongel is, and when the victim replied, "a Mongel is a

18  Mongel," the defendant took his knife out, walked up the victim, extended his right
arm, and stabbed the victim in the left upper chest area.  According to the

19  witness–witnesses–the victim stated, "he stabbed me."  The defendant then asked the
victim if the victim wanted to fight.  The victim walked towards an exit and fell to the

20  floor.  The victim was transported to USMC–University of Southern California
Medical center–for medical treatment where he soon succumbed to his injuries.  The

21  case cause–cause of death was due to a single stab wound to the right ventricle of the
heart.

22  (Pet. Ex. 1, Parole Hearing Transcript, at 14-15).

23        Additionally, the Board read into the record Petitioner's version of events:

24            Estrada offered the following words on the life crime.  He stated that the

25  victim was sitting in a group.  I was talking to him regarding a beer he had knocked
over in the restroom.  We shook hands and he started squeezing my hand real hard, so

26

27  _____

28       [1]There was some confusion as to whether the information was taken from the District Attorney's files or the Probation Officer's Report.  (Pet. Ex. 1 at 15-16).  However, Petitioner's counsel ultimately accepted that the source was the District Attorney's file.  (Id. at 16).

1
2
3
4

I had to pull my hand out, and then–and then I left.  I couldn't get out of the bar because the band was performing.  I turned around and went to pack up in a different location.  When I came back by the booth, the victim was standing with several other people blocking my exit.  I remember pulling my knife to defend myself.  I don't remember stabbing him.  I remember arguing with him earlier in the evening.  I remember having a closing buck knife, and the knife fell out of my sheath and I places the sheath and knife away.

5
(Id. at 17-18).

6
### DISCUSSION

7
## I.    Jurisdiction and Venue

8    A person in custody pursuant to the judgment of a State court may petition a district court for

9    relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

10   treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

11   U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

12   the United States Constitution stemming from the Board's denial of parole.  Petitioner is currently

13   incarcerated at Avenal State Prison, which is located in Kings County.  Kings County is within this

14   judicial district.  28 U.S.C. § 84(b).  Thus, the Court has jurisdiction over and is the proper venue for

15   this action.  *See* 28 U.S.C. § 2241(d).

16
## II.    ADEPA Standard of Review

17   All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and

18   Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996.  *Lindh v.*

19   *Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert.*

20   *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th

21   Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320

22   (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was

23   filed in 2008 and is consequently governed by AEDPA's provisions.  *Lockyer v. Andrade*, 538 U.S.

24   63, 70 (2003).

25   While Petitioner does not challenge his underlying conviction, the fact that Petitioner's

26   custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive

27   vehicle for Petitioner's habeas petition.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123,

28   1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in

1  holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State

2  court judgment even though he is challenging the denial of his parole).  Under AEDPA, a petition for

3  habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying

4  relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as

5  determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.

6  2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.

7      As a threshold matter, this Court must "first decide what constitutes 'clearly established

8  federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71

9  (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established federal law," this

10  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of

11  the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other

12  words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or

13  principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

14      Finally, this Court must consider whether the State court's decision was "contrary to, or

15  involved an unreasonable application of, clearly established federal law."  *Lockyer*, 538 U.S. at 72,

16  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

17  the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on

18  a question of law or if the State court decides a case differently than [the] Court has on a set of

19  materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.

20  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State

21  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

22  applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal

23  court may not issue the writ simply because the court concludes in its independent judgment that the

24  relevant State court decision applied clearly established federal law erroneously or incorrectly.

25  Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the

26  "unreasonable application" inquiry should ask whether the State court's application of clearly

27  established law was "objectively unreasonable." *Id.* at 409.

28  \\\

1   Petitioner bears the burden of establishing that the State court's decision is contrary to or
2   involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,
3   94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth
4   Circuit precedent remains relevant persuasive authority in determining whether a State court decision
5   is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v.*
6   *Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

7   AEDPA requires that a federal habeas court give considerable deference to State court
8   decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).
9   Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v.*
10   *Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537
11   U.S. 1149 (2003).

12   **III.    Review of Petitioner's Claim**

13   Petitioner asserts two grounds for relief, contend that: (1) there was no relevant or reliable
14   evidence to support the Board's denial of parole and thus the Board's denial of parole violated
15   Petitioner's right to due process of the law; and (2) California Penal Code section 3041 is
16   unconstitutional in light of the United States Supreme Court's decision in *Cunningham v. California*,
17   549 U.S. 270, 293 (2007).  (*See* Pet. Mem. P. & A.)

18   ***A.    Ground One: Due Process Violation***

19   Petitioner asserts that his right to due process of the law was violated by the lack of evidence
20   supporting the Board's decision.  The Court "analyze[s] a due process claim in two steps.  '[T]he
21   first asks whether there exist a liberty or property interest which has been interfered with by the
22   State; the second examines whether the procedures attendant upon that deprivation were
23   constitutionally sufficient.'" *Sass*, 461 F.3d at 1127.  The United States Constitution does not, by
24   itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21
25   (1981).

26   Respondent argues that Petitioner does not have a liberty interest in parole despite
27   recognizing the existence of Ninth Circuit authority to the contrary.  (Answer at 2-3).  The Ninth
28   Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a

State's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole).  California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003).  Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards.  *See Greenholtz*, 442 U.S. at 12.  Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial.  (Answer at 3).  This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials.  (*Id*. at 5).

Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding.  *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards. \\\

1   The Ninth Circuit has consistently recognized that a prisoner's due process rights are

2   implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see*

3   *also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445

4   (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum

5   requirements of procedural due process' unless the findings of the prison disciplinary board are

6   supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth

7   Circuit has held that the same standard of "some evidence" that applies to the revocation of good

8   time also extends to parole determinations and that this same standard of judicial review applies to

9   habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This

10   evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without

11   imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455.

12   Furthermore, the California Supreme Court has consistently found that in order to comport

13   with due process, the Board's denial of parole must be supported by "some evidence." *In re*

14   *Dannenberg*, 34 Cal.4th 1061, 1071 (Cal. 2005); *In re Rosenkrantz*, 26 Cal.4th 616, 625-626 (Cal.

15   2002) (applying some evidence standard to governor's authority, under Article V, section 8(b) of the

16   California Constitution, to reverse a grant of parole). A federal habeas court defers to a state court's

17   interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (citing *Estelle v. McGuire*, 502

18   U.S. 62, 67-68 (1991) and *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), for the proposition that, "a

19   state court's interpretation of state law, including one announced on direct appeal of the challenged

20   conviction, binds a federal court sitting in habeas corpus").

21   Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of

22   parole. As the "some evidence" standard is the applicable standard in determining whether

23   Petitioner's due process rights were violated, the dispositive inquiry now before this Court is whether

24   the Superior Court's decision was an unreasonable application of the standard. *See Williams*, 529

25   U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State

26   court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254). After

27   reviewing the record, the Court does not find the State court decision to constitute an unreasonable

28   application of the "some evidence" standard. The Los Angeles County Superior Court was the only

State court to issue a reasoned opinion as the California Court of Appeal and California Supreme Court issued summary denials in Petitioner's case.  By their "silent orders" denying the petitions, the appellate and State supreme court are presumed to have denied the claims presented for the same reasons stated in the lower court's opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915.  California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner.  Cal. Penal Code § 3041(b).  "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole.  Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080.  The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations.  *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916.  The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime."[2]  Cal. Code Regs., tit. 15, § 2402(b).  Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated.  Cal. Code Regs., tit. 15, § 2402 (c); *see also In re*

---

[2]The statute specifically states: "All relevant, reliable information available to the panel shall be considered in determining suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.  Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."  Cal. Code Regs., tit. 15, § 2402(b).

1   *Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

2       Here, the Los Angeles County Superior Court found that the Board's decision was supported

3   by some evidence consisting primarily of the commitment offense.  (Pet. Ex. 8 at 1).  The State court

4   noted that the Board considered additional factors, including the opposition by the District

5   Attorney's Office, Petitioner's non violent criminal misconduct prior to incarceration, and

6   Petitioner's positive gains while incarcerated.  (Id. at 2).  The State court found that the particularly

7   egregious nature of the crime constituted some evidence of current dangerousness.  (Id. at 1).  The

8   Court does not find this conclusion to be an unreasonable application of the some evidence standard.

9       State regulations permit consideration of the following factors in determining whether the

10  commitment offense favors the denial of parole: the offense was carried out in a dispassionate and

11  calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated

12  during or after the offense; the offense was carried out in a manner which demonstrates an

13  exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very

14  trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2402(c)(1).  Pursuant to California law,

15  "all second degree murders by definition involve some callousness–i.e., lack of emotion or

16  sympathy, emotional insensitivity, indifference to the feelings and suffering of others.  However,

17  parole is the rule, rather than the exception, and a conviction for second degree murder does not

18  automatically render one unsuitable."  *In re Smith*, 114 Cal.App.4th 343, 366 (Cal. Ct. App. 2003)

19  (citations omitted); *see also People v. Nieto Benitez*, 4 Cal.4th 91, 102 (Cal. 1992) (stating "[s]econd

20  degree murder is defined as the unlawful killing of a human being with malice aforethought, but

21  without the additional elements–i.e., wilfulness, premeditation, and deliberation–that would support

22  a conviction of first degree murder").  Thus, a showing of exceptional callousness, cruelty, or

23  dispassion for human suffering requires evidence that "the offense in question must have been

24  committed in a more aggravated or violent manner than that ordinarily shown in the commission of

25  second degree murder."  *In re Scott*, 119 Cal.App.4th 871, 891 (Cal. Ct. App. 2004); *see also In re*

26  *Dannenberg*, 34 Cal.4th at 1095 (quoting *In re Rosenkrantz*, 29 Cal.4th 616, 683 (Cal. 2002) for the

27  proposition that reliance on commitment offense as some evidence requires aggravating facts beyond

28  the minimum elements of the offense).

1    Here, the Court notes that the motive for the crime was excessively trivial.  According to the

2    facts as read into the record, and as affirmed by Petitioner in briefings submitted to this Court,

3    Petitioner seemingly stabbed the victim in the heart for no reason at all.  As described in one version

4    of events, the only exchange between Petitioner and the victim consisted of Petitioner asking the

5    victim what a Mongel was.  While Petitioner contends that he committed the act in self-defense, it is

6    clear that neither the Board nor the State court gave much credence to Petitioner's version of events.

7    Petitioner's version also minimizes the crime as Petitioner continually asserts self-defense as the

8    motive for having committed the crime.

9    The Court recognizes that the California Supreme Court has recently held that even where the

10   commitment offense was particularly egregious, reliance on this immutable factor *may* violate a

11   petitioner's due process rights.  *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).  In *Lawrence*,

12   the California Supreme Court found that the intervening twenty-four years in which petitioner, now

13   age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address

14   the circumstances that led to her criminality, her insight into her past criminal behavior, her

15   expressions of remorse, her realistic parole plans, the support of her family, and numerous

16   institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's

17   commitment offense" no longer probative of "her current threat to public safety, and thus provides

18   no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time."

19   *Id*. at 1226.

20   However, Petitioner's case is distinguishable from *Lawrence* in a significant manner.  As

21   stated in Petitioner's own brief, he turned himself in on May 31, 1991.  (Pet. Mem. P. & A. at 2).

22   The Court assumes that Petitioner was incarcerated and receives credit for the entire period spanning

23   from May 31, 1991 to when he was sentenced in February 1992.  Petitioner would have served his

24   minimum term of sixteen years on May 31, 2007; thus, Petitioner had not served his sixteen year

25   sentence by the time he appeared before the Board for the August 30, 2006 hearing.  Consequently,

26   the Board's reliance on Petitioner's commitment offense is not violative of Petitioner's due process

27   rights according to clearly established federal law as the Ninth Circuit has never held that reliance on

28   the commitment offense violates the requirements of due process where the parole board's

U.S. District Court
E. D. California

10

1  determination of unsuitability came prior to the prisoner serving the minimum number of years

2  required by their sentence.  *See Irons*, 505 F.3d at 853.  The Ninth Circuit in *Irons* stated:

3          We note that in all the cases in which we have held that a parole board's decision to
         deem a prisoner unsuitable for parole solely on the basis of his commitment offense
4          comports with due process, *the decision was made beore the inmate had served the
         minimum number of years required by his sentence*...All we held in those cases and
5          all we hold today, therefore, is that, given the particular circumstances of the offenses
         in these cases, *due process was not violated when these prisoners were deemed
6          unsuitable for parole prior to the expiration of their minimum terms*.

7  *Id*.  (emphasis added).  *Irons* would therefore suggest that the Board's reliance on immutable factors,

8  such as the commitment offense, would not implicate Petitioner's due process rights.

9          Additionally, as noted by the *Lawrence* court, a discipline-free record while incarcerated does

10 not automatically render the commitment offense unpredictive of current dangerousness.  *Id*. (citing

11 *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008), in concluding

12 that lack of insight into the commitment offense rendered aggravating factor of the crime probative

13 of petitioner's current dangerousness such that Governor's reversal of parole was neither arbitrary or

14 capricious despite an inmate's discipline-free record during incarceration).  As mentioned *supra*,

15 Petitioner's version of events continually asserts self-defense for his senseless stabbing of the victim.

16 Thus, to this day, Petitioner continues to blame the victim for the commitment offense and

17 minimizes his own conduct, thus making his commitment offense probative of current

18 dangerousness.  Thus, it was not erroneous of the Los Angeles County Superior Court to rely on the

19 commitment offense in finding that there was some evidence to support the Board's finding that

20 Petitioner posed an unreasonable risk of danger to the public safety.  Noting that the "some evidence

21 standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the

22 disciplinary board were without support or otherwise arbitrary,'" the Court finds that the State court

23 did not unreasonable apply this standard.  *See Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

24      **B.      Ground Two: Cunningham**

25      Petitioner argues that the Board's actions violate his constitutional rights pursuant to the

26 Supreme Court's decision in *Cunningham*.  *Cunningham* is the descendant of *Apprendi v. New

27 Jersey*, 530 U.S. 466 (2000) and its progeny.  In *Apprendi*, the United States Supreme Court held

28 that the Sixth Amendment right to a jury trial required that "any fact that *increases the penalty for a*

1   *crime beyond the prescribed statutory maximum* must be submitted to jury, and proved beyond a

2   reasonable doubt." *Id.* at 490 (emphasis added).  In the next Supreme Court case to consider this

3   issue, *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004), the high court explained that the

4   "statutory maximum" is the maximum sentence a judge may impose based exclusively on the facts

5   reflected in the jury verdict or admitted by the defendant and not the maximum sentence a judge may

6   impose after finding additional facts.  In *Cunningham*, 548 U.S. at 293, the Supreme Court

7   subsequently found that the imposition of upper terms, as delineated in California's Determinate

8   Sentencing Law, based on facts found by a judge violated a criminal defendant's constitutional

9   rights.

10         Petitioner's claim for relief under *Cunningham* is misguided and cannot provide a basis for

11   relief.  The fundamental flaw in Petitioner's argument, as noted by several district courts, is that

12   Petitioner is serving an indeterminate life sentence. *See Strong v. Curry*, 2009 WL 857524, *11 (N.

13   D. Cal. 2009) ("*Apprendi* and its progeny have no application to the parole decision for a prisoner

14   serving an indeterminate life sentence"); *see also Harding v. Dickinson*, 2009 WL 2058155, *9 (C.D.

15   Cal. 2009) ("[t]he decision in *Cunningham* [citation], does not apply where, as here, the Petitioner is

16   serving an indeterminate sentence").  Consequently, the statutory maximum for Petitioner's crime is

17   life imprisonment and the Board's decision to deny Petitioner parole based on factors not found by a

18   jury cannot increase the statutory maximum Petitioner faces.  As Petitioner's rights under

19   *Cunningham* were not implicated, Petitioner is not entitled to relief on this ground.

20                                      **RECOMMENDATION**

21         Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

22   DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

23   Respondent.

24         This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii United

25   States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

26   of the Local Rules of Practice for the United States District Court, Eastern District of California.

27   Within thirty (30) days after being served with a copy, any party may file written objections with the

28   court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:      September 9, 2009              /s/ John M. Dixon              **
UNITED STATES MAGISTRATE JUDGE